## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

INTERNATIONAL PAINTERS AND     *
ALLIED TRADES INDUSTRY PENSION
FUND, et al.,     *

       Plaintiffs,

       v.     *        CIVIL NO. JKB-25-0056

TEMP-TECH INDUSTRIES, INC.,     *

       Defendant.     *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

### MEMORANDUM AND ORDER

Plaintiffs International Painters and Allied Trades Industry Pension Fund (the "Fund") and Daniel R. Williams, in his official capacity as a fiduciary, brought suit against Defendant Temp-Tech Industries, Inc. (ECF No. 1.) Plaintiffs filed suit "pursuant to the Employee Retirement Income Security Act of 1974 ('ERISA'), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ('MPPAA'), for the collection of withdrawal liability and additional statutory damages." (*Id.* ¶ 1.) Pending before the Court is Plaintiffs' Motion for Default Judgment. (ECF No. 11.) The Court will grant the Motion in part, but will require additional briefing with respect to damages and fees.

### I.    *Facts*

The Fund is a "a multiemployer employee benefit pension plan within the meaning 29 U.S.C. §§ 1002(3), 1002(37), and 1301(a)(3), that has been established pursuant to 29 U.S.C. § 186(c)(5)." (ECF No. 1 ¶ 4.) And "the Fund was a third-party beneficiary to collective bargaining agreements (the 'CBAs') between Defendant . . . and District Councils/Local Unions of the

1

International Union of Painters and Allied Trades,AFL-CIO." (*Id.* ¶ 8.) Pursuant to the CBAs, Defendant was required to remit contributions to the Fund for work performed by employees covered by the CBAs and the Fund. (*Id.* ¶ 9.)

Defendant "completely withdrew from the Fund within the meaning of 29 U.S.C. § 1383(a) during the 2018 plan year" and, on February 22, 2024, the Fund send a demand letter to Defendant, in accordance with 29 U.S.C. § 1382 and 1399(b)(1). (*Id.* ¶¶ 10–12.) The demand letter explained that Defendant withdrew from the fund, that the amount of withdrawal liability was $358,280, that the payment could either be made by lump sum or by 94 equal monthly payments, and that payment was due by April 22, 2024. (*Id.* ¶ 12.) Defendant did not make any payment by that date, as required by the letter and by 29 U.S.C. § 1399(c)(2). (*Id.* ¶ 13.) On April 24, 2024, the Fund sent Defendant a cure letter pursuant to 29 U.S.C. § 1399(c)(5), which explained that if Defendant did not make the missed payment, the Fund would file a federal lawsuit to collect the entire accelerated balance plus damages. (*Id.* ¶¶ 13–16.) Defendant did not make any payments, and did not timely seek review under 29 U.S.C. § 1399(b)(2)(A) or initiate arbitration pursuant to 29 U.S.C. § 1401(a)(1). (*Id.* ¶ 17.)

Plaintiffs brought suit for violation of 29 U.S.C. § 1381. (*Id.* ¶¶ 21–31.) Plaintiffs served Defendant, and Defendant's answer was due on February 6, 2025. (ECF No. 5.) Plaintiffs filed a Motion for Clerk's Entry of Default, which was granted. (ECF Nos. 6–8.) Plaintiffs now move for default judgment. (ECF No. 11.)

## II.    *Standard*

After entry of default under Rule 55(a), a party may move for default judgment. Fed. R. Civ. P. 55(b)(2). Entry of default against a defendant does not alone entitle a plaintiff to judgment as of right:

2

"The defendant, by [its] default, admits the plaintiff's well-pleaded allegations of fact . . . [but] is not held . . . to admit conclusions of law. In short, . . . a default is not treated as an absolute confession by the defendant of [its] liability and of the plaintiff's right to recover." The court must . . . determine whether the [conceded facts] support the relief sought in [the] action.

*Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). "In the Fourth Circuit, district courts analyzing default judgments have applied the standards articulated by the United States Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), to determine whether allegations within the complaint are 'well-pleaded.'" *Vasquez-Padilla v. Medco Properties, LLC*, Civ. No. PX-16-3740, 2017 WL 4747063, at *2 (D. Md. Oct. 20, 2017) (collecting cases). "Where a complaint offers only 'labels and conclusions' or 'naked assertion[s] devoid of further factual enhancement,' the allegations therein are not well-pleaded and, consistent with the Court's discretion to grant default judgment, relief should be denied." *Id.*

### III.    *Analysis*

For the reasons set forth below, the Motion for Default Judgment will be granted and Plaintiffs will be required to supplement their briefing with respect to damages and fees.

### A.    **Liability**

"Multiemployer pension plans, structured in accordance with ERISA, provide for the pooling of contributions and liabilities." *Penske Logistics LLC v. Freight Drivers & Helpers Loc. Union No. 557 Pension Fund*, 820 F. App'x 179, 181 (4th Cir. 2020). And, "Congress in 1980 passed the Multiemployer Pension Plan Amendments Act (the 'MPPAA')," which "requires that an employer withdrawing from a multiemployer pension plan pay a fixed and certain debt to the pension plan." *Trs. of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*, 791

3

F.3d 436, 440 (4th Cir. 2015) (internal quotation marks and citations omitted). "This withdrawal liability is the employer's proportionate share of the plan's 'unfunded vested benefits,' calculated as the difference between the present value of vested benefits and the current value of the plan's assets." *Id.* (internal quotation marks and citations omitted). A "complete withdrawal from a multiemployer plan occurs when an employer (1) permanently ceases to have an obligation to contribute under the plan, or (2) permanently ceases all covered operations under the plan." 29 U.S.C. § 1383(a).

Under the MPPAA, "[w]hen an employer withdraws, the benefit plan's sponsor . . . determines the amount of the employer's withdrawal liability, devises a payment schedule, gives notice to the employer and demands payment." *Republic Indus., Inc. v. Teamsters Joint Council No. 83 of Va. Pension Fund*, 718 F.2d 628, 632 (4th Cir. 1983) (citing 29 U.S.C. §§ 1382, 1399). Further, "[i]f the employer disputes either the fact or the amount of its liability, it has the right to negotiate the matter with the plan's sponsor . . . and if it is unsuccessful, it (as well as the plan's sponsor) has the right to invoke arbitration." *Id.* (citing 29 U.S.C. §§ 1399(b)(2)(A), 1401(a)). If the employer does not dispute the amount, "the amount assessed by the plan sponsor as withdrawal liability 'shall be due and owing on the schedule set forth by the plan sponsor,' which may then 'bring an action in a State or Federal court of competent jurisdiction for collection.'" *Plumbing Servs.*, 791 F.3d at 441 (citing 29 U.S.C. § 1401(b)(1)). And "[i]n such a circumstance, an employer is deemed to have waived review of all issues concerning the determination of withdrawal liability." *Id.*

A "default" is the "the failure of an employer to make, when due, [withdrawal liability payments], if the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure." 29 U.S.C. § 1399(c)(5)(A). And, "[i]n the event of a

4

default, a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made." *Id.*

As alleged in the Complaint, Defendant was required to contribute to the Fund, a multiemployer plan, and withdrew from it. Plaintiffs then sent a demand letter to the Defendant, notifying it of its withdrawal liability and the date it was due. Defendant did not make the requisite payment, and Plaintiffs sent a cure letter. Defendant did not make any payments, nor did it seek review or initiate arbitration. This is sufficient to state a claim. *Int'l Painters & Allied Trades Indus. Pension Fund v. Lettermen Signage, Inc.*, Civ. No. JKB-23-1059, 2024 WL 2882178, at *3 (D. Md. June 7, 2024) ("To state a claim for withdrawal liability under ERISA, Plaintiffs must allege that: (1) Defendant was required to contribute to a multiemployer plan; (2) Defendant withdrew from that plan; (3) Defendant was presented with a demand for withdrawal-liability payments; (4) Defendant failed to make certain payments when due; and (5) Defendant did not initiate arbitration."). Therefore, the Court will grant the Motion for Default Judgment as to Defendant's liability.

### B.    Damages & Fees

Because the Court will grant Plaintiffs' Motion for Default Judgment, it must make a determination of damages. *See Agora Fin., LLC v. Samler*, 725 F. Supp. 2d 491, 494 (D. Md. 2010) ("If the court determines that liability is established, the court must then determine the appropriate amount of damages . . . . The court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations."). The court may award damages without a hearing if "the record supports the damages requested," such as through comprehensive, detailed, and uncontroverted exhibit and affidavit evidence

establishing the amount of damages. *Balt. Line Handling Co. v. Brophy,* 771 F. Supp. 2d 531, 541

(D. Md. 2011) (citation and internal quotation marks omitted).

In an action such as this one, where judgment is awarded in favor of the plan, "the court

*shall* award the plan" the following:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of—
>> (i) interest on the unpaid contributions, or
>> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2) (emphasis added). Thus, Plaintiffs are entitled to an award of each of the

above-listed categories of damages and fees.

### 1.    Damages

Plaintiffs are entitled to the outstanding withdrawal liability, $358,280. (*See* ECF No. 11-

3 (demand letter detailing the amount owed)); 29 U.S.C. § 1132(g)(2)(A); 29 U.S.C.

§ 1399(c)(5)(A) (providing that upon a default, a fund is entitled to "immediate payment of the

outstanding amount of an employer's withdrawal liability"). Thus, the Court will award Plaintiffs

$358,280.

Plaintiffs are also entitled to interest on that amount. *See* 29 U.S.C. § 1132(g)(2)(B); 29

U.S.C. § 1399(c)(5)(A) (providing that a default entitles a fund to "accrued interest on the total

outstanding liability from the due date of the first payment which was not timely made"). The full

amount of the withdrawal liability or the first of 94 monthly payments was due on April 22, 2024.

(*See* ECF No. 11-3 (demand letter providing that "the first payment is due by April 22, 2024").)

Thus, Plaintiffs are entitled to interest from April 22, 2024 to the present.

"[I]nterest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of title 26." 29 U.S.C. § 1132(g)(2). The Fund's Rules and Regulations simply provide that interest accrues "at the rate for underpayment of federal income taxes under IRC 6621." (ECF No. 11-5 at 94.) A declaration from Michael O'Malley, the Audit and Collections Director for the Fund, explains that the interest is $28,031.73 through April 1, 2025. (ECF No. 11-6.) However, he does not identify the interest rate used or how he arrived at this figure. (*See generally id.*) He explains only that he "calculated the interest owed by Defendant pursuant to Section 11.24(f) of the Fund's Rules and Regulations to a total of $28,031.73 through April 1, 2025" and attaches a document that provides no insight into how this amount was calculated. (*Id.*) As another court in this district has explained—in this same scenario, with this same Plaintiff, and in the face of a similarly barebones declaration from Mr. O'Malley— "[t]he Court simply cannot countenance such slipshod calculations of damages." *Int'l Painters & Allied Trades Indus. Pension Fund v. Gordon Sign Co., LLC*, Civ. No. 24-0096-BAH, 2025 WL 660210, at *4 (D. Md. Feb. 28, 2025).[1] The Plaintiffs will be directed to supplement their briefing to show their math with respect to the interest rate calculation.

Further, Plaintiffs are entitled to a payment of liquidated damages, which amounts to the greater of the interest on the withdrawal liability or "liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under

---

[1] Further, an exhibit attached to Mr. O'Malley's declaration reflects that the interest is accruing at a rate of $76.07 per day. (ECF No. 11-6 at 3.) However, the IIRC 6621 rates appear to have changed throughout the relevant time period, so it does not seem possible that the interest rate would accrue at a steady rate of $76.07 a day. It is also not clear whether the interest rates pursuant to IIRC 6621 are compounding, which likewise would make a steady rate of $76.07 unlikely.

Federal or State law)" of the withdrawal liability. 29 U.S.C. § 1132(g)(2)(C). Plaintiffs seek the latter amount (*i.e.*, 20% of the withdrawal liability), which is $71,656. Plaintiffs will be awarded this amount.

### 2.    Attorneys' Fees and Costs

Plaintiffs are also entitled to an award of reasonable attorneys' fees and costs. 29 U.S.C. § 1132(g)(2)(D). Plaintiffs seek fees and expenses totaling $11,566.89.

As the Fourth Circuit has explained:

> 29 U.S.C. § 1132(g) authorizes district courts to allow "a reasonable attorney's fee" in "any action under [ERISA]." 29 U.S.C. § 1132(g)(1) (2002). While the word "action" need not necessarily mean litigation in district court, *see Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 559–61 (1986), here we agree with our sister circuits that have held ERISA attorney's fees to be categorically unavailable for expenses incurred while exhausting administrative remedies. *See Cann v. Carpenters' Pension Trust Fund for N. Cal.*, 989 F.2d 313, 316 (9th Cir.1993) ("We construe [§ 1132(g)(1)] as limiting the award to fees incurred in the litigation in court."); *Anderson v. Procter & Gamble Co.*, 220 F.3d 449, 455 (6th Cir.2000) ("[Section] 1132(g)(1) should not be interpreted to permit fee awards for legal expenses incurred in the course of exhausting administrative remedies.").

*Rego v. Westvaco Corp.*, 319 F.3d 140, 150 (4th Cir. 2003). And while "district courts have not applied *Rego*'s limitation on fee awards in ERISA cases in a way to exclude all pre-litigation fees and costs," certain prelitigation work may not appropriately fall within the scope of a fee award under 29 U.S.C. § 1132(g). *Int'l Painters & Allied Trades Indus. Fund v. Interiors by Steve, Inc.*, Civ. No. JRR-21-229, 2023 WL 4446572, at *8–9 (D. Md. July 11, 2023) (ultimately concluding that "prelitigation work on the assessment of withdrawal liability in this case and efforts to collect withdrawal liability" should not be included in the fee award).

This action was filed on January 8, 2025, and the invoices reflect work dating back to May 2023. (*See* ECF No. 11-8 at 1.) Most of the fees were incurred in 2023 and 2024, and relate to the demand and cure letters. (*See* ECF No. 11-8 at 1–16.) Only the entries from July 2, 2024

forward appear to relate to this litigation. (*See, e.g.*, ECF No. 11-8 at 17 (entry from July 2, 2024: "research and analyze controlled group members for purposes of naming them in complaint); *id.* at 18 (entry from August 13, 2024: "prepare complaint against employer for interim payment").) Plaintiffs have not addressed this issue in their briefing, and will be directed to explain why all of the requested fees are recoverable, or to revise their fee request.

## IV.   Conclusion

For the foregoing reasons, it is ORDERED that:

1.   The Motion for Default Judgment (ECF No. 11) is GRANTED with respect to Defendant's liability.  The Motion is HELD IN ABEYANCE with respect to damages, pending receipt of further briefing.

2.   Plaintiffs are DIRECTED to supplement their briefing by May 27, 2025.

3.   Plaintiffs are DIRECTED to serve this Memorandum and Order and any additional briefing on Defendant.

DATED this $\underline{9}$ day of May, 2025.

BY THE COURT:

James K. Bredar
United States District Judge

9